IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAMPLIGHT LICENSING LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 22-418-CFC |
| ) | |
| ABB INC., ) | |
| ) | |
| Defendant. ) | |
| LAMPLIGHT LICENSING LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 22-1017-CFC |
| ) | |
| INGRAM MICRO, INC., ) | |
| ) | |
| Defendant. ) | |

Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware

*Counsel for Plaintiff Lamplight Licensing LLC*

Benjamin J. Schladweiler, GREENBERG TRAURIG, LLP, Wilmington, Delaware; Andrew R. Sommer, GREENBERG TRAURIG, LLP, McLean, Virginia

*Counsel for Defendant ABB Inc.*

**MEMORANDUM OPINION**

May 22, 2023
Wilmington, Delaware

                                                                                                   COLM F. CONNOLLY
                                                                                                                CHIEF JUDGE

Pending before me in these actions is "Plaintiff's Motion to Set Aside Memorandum Order of November 10, 2022" (No. 22-418, D.I. 31; No. 22-1017, D.I. 21).

## I. BACKGROUND

Mr. Chong filed these and four other patent infringement cases on behalf of Plaintiff Lamplight Licensing LLC beginning November 2021.[1]

For reasons detailed in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), by early September 2022, I had developed concerns that certain LLC plaintiffs, including Lamplight, in several patent infringement cases filed by Mr. Chong in this Court, may have had undisclosed financial relationships with the patent monetization firm IP Edge and may not have complied with my April 18, 2022 standing order regarding third-party litigation funding. (I adopt and incorporate here *Nimitz*.) To address those concerns and similar concerns I had about Nimitz (which was not represented by Mr. Chong), I issued on September 12 and 13, 2022 in 12 cases, including these two cases, orders

---

[1] *See Lamplight Licensing, LLC v. CyberPower Sys., Inc.*, No. 21-1689; *Lamplight Licensing LLC v. Vertiv Holdings Co.*, No. 21-1690; *Lamplight Licensing, LLC v. Legrand AV, Inc.*, No. 21-1691; *Lamplight Licensing LLC v. Panduit Corp.*, No. 22-417.

convening a series of evidentiary hearings to determine whether the LLC plaintiffs in the 12 cases had complied with the third-party litigation funding standing order. *Id.* at *11. I also directed the owners of the LLC plaintiffs to attend the hearings in person. *Id.*

On September 13, 2022 and November 2, 2022 respectively, Lamplight filed in the Ingram Micro Action (No. 22-1017) and the ABB Action (No. 22-418) a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). No. 22-418, D.I. 21; No. 22-1017, D.I. 10.

On November 4, 2022, I convened the first of the scheduled evidentiary hearings—a consolidated proceeding for cases filed by Nimitz, Mellaconic IP LLC, and Lamplight. The Lamplight cases were originally scheduled for a November 10 evidentiary hearing, but on October 12, 2022, Mr. Chong asked me to include the Lamplight cases at the November 4 hearing to accommodate the work schedule of Lamplight's owner, Sally Pugal. No. 22-418, D.I. 17; No. 22-1017, D.I. 13. I agreed to that request. No. 22-418, October 17, 2022 Oral Order; No. 22-1017, October 17, 2022 Oral Order. Despite the Court re-scheduling Lamplight's hearing to accommodate her schedule, Ms. Pugal did not attend the hearing due to medical issues. *Nimitz*, 2022 WL 17338396, at *12.

As I explained in detail in *Nimitz*, the evidence adduced and the representations made by counsel at the November 4, 2022 hearing raised serious

concerns that the parties may have made inaccurate statements in filings with the Court; that counsel, including Mr. Chong, may have failed to comply with the Rules of Professional Conduct; that real parties in interest, such as IP Edge and a related entity called Mavexar, may have been hidden from the Court and the defendants; and that those real parties in interest may have perpetrated a fraud on the court by fraudulently conveying the patents asserted in this Court to a shell LLC and filing fictious patent assignments with the United States Patent and Trademark Office (PTO), all designed to shield the real parties in interest from the potential liability they would otherwise face by asserting in litigation the patents in question. *Nimitz*, 2022 WL 17338396, at *26.

Believing that I needed more information to decide whether further action was warranted to address the four concerns I articulated in *Nimitz*, I issued in each of the Nimitz, Mellaconic, and Lamplight cases on November 10, 2022 a memorandum order requiring the plaintiffs in these cases to produce certain records (the November 10 Memorandum Order) no later than December 8, 2022. No. 22-418, D.I. 24; No. 22-1017, D.I. 17; *see Mellaconic IP LLC v. TimeClock Plus, LLC*, No. 22-244, D.I. 22; *Mellaconic IP LLC v. Deputy, Inc.*, No. 22-541, D.I. 15; *Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247, D.I. 27; *Nimitz Techs. LLC v. BuzzFeed, Inc.*, No. 21-1362, D.I. 21; *Nimitz Techs. LLC v. Imagine Learning, Inc.*, No. 21-1855, D.I. 22; *Nimitz Techs. LLC v. Bloomberg L.P.*, No.

3

22-413, D.I. 18. That same day, I convened an evidentiary hearing in two cases filed by Backertop Licensing LLC. As set forth in *Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22-572, D.I. 32,[2] which I adopt and incorporate here, the evidence adduced at that hearing only heightened the concerns that gave rise to the November 10 Memorandum Orders.

The categories of documents covered by the November 10 Memorandum Orders in the Nimitz cases and these cases are identical in all material respects. In each case, the Order requires the production of documents and communications that the nominal owner of the LLC plaintiff and the LLC's lawyers had with Mavexar and certain individuals associated with Mavexar relating to: the formation of the LLC; the LLC's assets; the LLC's retention of its lawyers and law firms; the patents asserted in the LLC's cases in this Court; the LLC's potential scope of liability resulting from the acquisition of those patents; the settlement, potential settlement, and dismissal of the LLC's cases; and the LLC's November evidentiary hearing. The November 10 Memorandum Order also requires the production of (1) monthly statements for any bank accounts held by the LLC for the period starting with the month before the LLC filed its first lawsuit in this Court through the end of the month following the LLC's last lawsuit; (2) documents relating to

---

[2] The same memorandum opinion is also docketed at *Backertop Licensing LLC v. August Home, Inc.*, No. 22-573, D.I. 34.

4

the use, purchase, or lease of the suite address for the LLC identified in the complaints filed in the actions; and (3) a sworn declaration of the LLC's nominal owner that identifies the LLC's assets as of the dates the LLC filed its complaints in this Court.

On November 16, 2022, Nimitz filed with the United States Court of Appeals for the Federal Circuit a petition for a writ of mandamus to reverse the November 10 Memorandum Order. *In re Nimitz Techs. LLC*, No. 23-103, D.I. 2-1 at 3 (Fed. Cir. Nov. 16, 2022). On November 17, the Federal Circuit stayed Nimitz's November 10 Memorandum Order "pending further action of" that court. No. 23-103, D.I. 5 at 2 (Fed. Cir. Nov. 17, 2022). The next day, Lamplight filed in these cases a motion to stay the November 10 Memorandum Order and all proceedings in these cases "pending a ruling on Nimitz'[s] petition." No. 22-418, D.I. 25 at 2; No. 22-1017, D.I. 18 at 2. On November 21, I granted Lamplight's motions and stayed these cases "until the stay currently in place in connect[ion] with the Nimitz Petition . . . is terminated." No. 22-418, D.I. 26; No. 22-1017, D.I. 19.

On December 8, the Federal Circuit denied Nimitz's petition and lifted the stay in the Nimitz actions. *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *3 (Fed. Cir. Dec. 8, 2022). In doing so, the Court held that the four concerns I had identified as the bases for the November 10 Memorandum Order

5

> [a]ll . . . relate[] to potential legal issues in the case, subject to the "principle of party presentation," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (discussing the principle and its limits), or to aspects of proper practice before the court, over which district courts have a range of authority preserved by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 83(b); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The district court did not seek information simply in order to serve an interest in public awareness, independent of the adjudicatory and court-functioning interests reflected in the stated concerns.

*Id.* at *2.

Nimitz thereafter filed a combined petition for panel rehearing and rehearing en banc in the Federal Circuit. No. 23-103, D.I. 55 (Fed. Cir. Dec. 28, 2022). On January 31, 2023, the Federal Circuit denied that petition. No. 23-103, D.I. 58 at 2 (Fed. Cir. Jan. 31, 2023). On February 3, Nimitz filed a motion asking the Federal Circuit "to stay issuing the mandate . . . pending the filing of a petition for mandamus and/or writ of certiorari in the United States Supreme Court." No. 23-103, D.I. 61 at 1 (Fed. Cir. Feb. 3, 2023). Nimitz argued in its motion that "there [wa]s . . . good cause for a stay" of the issuance of the mandate because "[i]f the mandate is not stayed, Nimitz would be required to disclose its privileged communications." No. 23-103, D.I. 61 at 2 (Fed. Cir. Feb 3, 2023). On February 7, the Federal Circuit issued a written order denying Nimitz's motion to stay the issuance of the mandate. No. 23-103, D.I. 62 at 2 (Fed. Cir. Feb. 7, 2023).

## II. MOTION TO SET ASIDE THE NOVEMBER 10 MEMORANDUM ORDER

On March 2, 2023, Lamplight filed the pending motion to set aside the November 10 Memorandum Order. Lamplight's primary contention in support of the motion is that I lack jurisdiction to issue and enforce the memorandum order because Lamplight voluntarily moved to dismiss the cases and because the defendants did not present the concerns that I identified as the bases for the issuance of the memorandum order. This argument is easily dismissed.

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). The Court offered in *Cooter* this list of "example[s]" of such collateral issues:

> For example, district courts may award costs after an action is dismissed for want of jurisdiction. *See* 28 U.S.C. § 1919. This Court has indicated that motions for costs or attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 170, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939). Thus, even "years after the entry of a judgment on the merits" a federal court could consider an award of counsel fees. *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451, n. 13, 102 S.Ct. 1162, 1166, n. 13, 71 L.Ed.2d 325 (1982). A criminal contempt charge is likewise "'a separate and independent proceeding at law'" that is not part of the original action. *Bray v. United States*, 423 U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975), quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S.

7

> 418, 445, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911). A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated. *See United States v. Mine Workers*, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) ("Violations of an order are punishable as criminal contempt even though . . . the basic action has become moot"); *Gompers v. Buck's Stove & Range Co.*, *supra*, 221 U.S., at 451, 31 S.Ct., at 502 (when main case was settled, action became moot, "of course without prejudice to the power and right of the court to punish for contempt by proper proceedings").

*Id.* at 395–96 (alterations in the original).

The Court specifically held in *Cooter* that a voluntary dismissal under Rule 41(a)(1) does not deprive a district court of jurisdiction over a Rule 11 motion. *Id.* at 398. But as the Third Circuit (whose law governs this Court's exercise of its inherent powers) recognized in *Haviland v. Specter*, 561 F. App'x 146, 150 (3d Cir. 2014), there is no "principled reason why the Court's decision [in *Cooter*] would not apply equally to sanctions imposed pursuant to a district court's inherent authority."

What I said *Nimitz* bears repeating here:

> "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs

8

> so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).
>
> The Supreme Court has expressly held that a federal court's inherent powers include the powers I have exercised here: "the power to control admission to its bar and to discipline attorneys who appear before it," *id.*, the power to enforce compliance with court orders, *see id.*, and "the power to conduct an independent investigation in order to determine whether [the court] has been the victim of fraud." *Id.* at 44. These powers extend to nonparties. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a nonparty as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." (citations omitted)).

*Nimitz*, 2022 WL 17338396, at *26–27 (alterations in the original).

It makes no sense that a party could deprive a court of its inherent powers simply by filing a notice of dismissal. *Haviland*, 561 F. App'x at 150. To hold otherwise would render district courts impotent to manage their cases in an orderly fashion and would foster abuse of our judicial system by unethical litigants and their attorneys.

For these same reasons, it is also not necessary that a party—as opposed to the court—raise the concerns that necessitate the exercise of the court's inherent

9

powers. As the Supreme Court held in the seminal case, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), "it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants."

In sum, I neither lacked jurisdiction to issue the November 10 Memorandum Order nor lack jurisdiction to enforce it now.

Lamplight next argues that the categories of information sought by the November 10 Memorandum Order are "overly broad" because they "necessarily include communications and correspondence relating to other Lamplight cases and lawsuits that were not filed in the District of Delaware." No. 22-418, D.I. 32 at 12; No. 22-1017, D.I. 22 at 12. But the fact that a category of documents relevant to the concerns raised in these cases happens also to touch on issues in other cases does not render the demand to produce that category of documents overly broad. Lamplight also faults the memorandum order for "repeat[ing] three [sic³] times" the categories of communications and documents it directs Lamplight to produce.

---

³ The November 10 Memorandum Order repeats twice, not three times, the categories of records it directs Lamplight to produce. *See* No. 22-418, D.I. 24; No. 22-1017, D.I. 17. The November 10 Memorandum Orders in the Mellaconic and Backertop cases repeat the categories three times to correspond with records sought from Plaintiff, Plaintiff's Delaware Counsel, and Plaintiff's non-Delaware Counsel. Lamplight does not have non-Delaware Counsel in these cases, so the categories of documents are recited only two times.

10

No. 22-418, D.I. 32 at 12; No. 22-1017, D.I. 22 at 12. The repetition, however, is intentional—and necessary—as it ensures that the relevant documents and communications of (1) Ms. Pugal (Lamplight's nominal owner, *see Nimitz*, 2022 WL 17338396, at *9, *11–13) and (2) Mr. Chong and his firm are produced. Lamplight also argues that the memorandum order's requirement that Lamplight produce monthly bank account statements for the period between March 1, 2022 and August 31, 2022 is overly broad because "any financial activity in any account owned by Lamplight during that time frame would be included in the scope of production, and would reasonably include transactions wholly unrelated to these two cases." No. 22-418, D.I. 32 at 13; No. 22-1017, D.I. 22 at 13. The information sought, however, is relevant to ascertaining whether Lamplight was a purposefully empty vessel that was fraudulently formed to insulate Mavexar and its principals and/or Ms. Pugal from liability they could otherwise face by accusing others of infringing the asserted patents.

Finally, Lamplight argues that the November 10 Memorandum Order should be set aside because it "is geared towards disclosing" attorney-client privileged communications and attorney work product. No. 22-418, D.I. 32 at 13; No. 22-1017, D.I. 22 at 13. Lamplight, however, cites, and I know of, no case that precludes a court from requiring a party to produce *to the court* materials that the party claims are privileged or covered by the work-product doctrine. There is also

11

good reason to doubt Lamplight's privilege and work-product assertions. The premise of those assertions is that Mavexar is an agent of Lamplight. *See* No. 22-418, D.I. 32 at 13–14; No. 22-1017, D.I. 22 at 13–14. But so far it appears that Ms. Pugal and Lamplight are doing Mavexar's bidding, *see Nimitz*, 2022 WL 17338396, at *9, *11–13; not the other way around. The "principal" here appears to be Mavexar; not Lamplight or Ms. Pugal. Moreover, as Lamplight concedes, "[d]ocuments may also be submitted to a court to determine whether they may be subject to the crime/fraud exception" to the privilege and attorney work product doctrines. No. 22-418, D.I. 32 at 15; No. 22-1017, D.I. 22 at 15. Although I am far from making any definitive conclusions here, it is abundantly clear that Mavexar and its principals may have used Lamplight and Ms. Pugal, along with other LLC plaintiffs and their nominal owners, to perpetrate a fraud on this Court, the PTO, and numerous defendants.

For these reasons, I will deny Lamplight's motion to set aside the November 10 Memorandum Order. And I will order Lamplight to comply with the November 10 Memorandum Order no later than May 31, 2023.

### III. CONCLUSION

The Court will issue an Order consistent with this Memorandum Opinion.